# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| JESUS GARCIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF KING CITY, et al.,<br><br>Defendants. | Case No. 14-cv-01126-BLF<br><br>**ORDER DENYING DEFENDANT DOMINIC BALDIVIEZ'S MOTION TO DISMISS FOR QUALIFIED IMMUNITY**<br><br>[Re: ECF 63] |

Defendant Dominic Baldiviez moves to dismiss this action against him on the grounds of qualified immunity. Having reviewed the briefing and oral argument of the parties, as well as the governing law, the Court DENIES Defendant's motion, without prejudice to Defendant again raising qualified immunity as a defense at a later stage of the litigation.

## I.  FACTUAL BACKGROUND

Plaintiffs' factual allegations in the SAC are presumed true for purposes of the motion to dismiss. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008).

This suit alleges the existence of a conspiracy to target Hispanic and Latino drivers in King City, California, and wrongfully tow and impound their automobiles. The SAC alleges that several King City police officers conspired with the owner of a local towing company, Miller's Towing, to create a towing scheme: an officer would pull over an automobile driven by a Hispanic or Latino individual, would order the vehicle be towed or impounded without legal justification, and then a tow truck from Miller's Towing would arrive within minutes to tow away the car. *See* SAC ¶¶ 21-25, 27-28. A group of officers (referred to throughout the SAC as "the Crew") would then sell the victim's vehicles and retain the proceeds from the sale, misappropriate the vehicles for their personal use, or require the victim's to pay exorbitant fees in order to recover their vehicles.

*See* SAC ¶¶ 29-31.

Mr. Baldiviez was a police officer and, for some time, the Chief of Police of King City. SAC ¶ 16. The suit does not allege that he was a member of the Crew that concocted the towing scheme, but does allege that he was part of the larger conspiracy. *See* SAC ¶ 32. Specifically, the suit alleges that Mr. Baldiviez "knew about, acquiesced in, ratified, approved, and/or condoned operation of said scheme," and that he "knowingly profited from implementation of said scheme" by receiving a portion of the proceeds from the sale of vehicles, receiving one or more of the vehicles for his own personal use, or receiving a portion of the money paid by the scheme's victims before their vehicles were returned. *Id.*

## II. LEGAL STANDARD

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A plaintiff must therefore "plead enough facts to state a claim for relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Any complaint that fails to meet these requirements may be dismissed pursuant to Rule 12(b)(6).

## III. DISCUSSION

The Supreme Court has implored that qualified immunity should be resolved "at the earliest possible stage of the litigation." *Wood v. Moss*, 134 S. Ct. 2056, 2065 n.4 (2014). The Court may grant a motion to dismiss under Rule 12(b)(6) on qualified immunity grounds if the facts pled in the complaint, taken as true, would nonetheless result in a defendant being entitled to qualified immunity. *See, e.g.*, *Iqbal* at 685-86 ("The basis thrust of the qualified immunity doctrine is to free officials from the concerns of litigation."). A government official sued under Section 1983 is entitled to qualified immunity at the motion to dismiss stage unless the Plaintiff pleads sufficient facts to allege that (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct. *See, e.g.*, *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). A supervisor sued under Section 1983 cannot be held

liable under a theory of vicarious liability for the actions of his subordinates. *See Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989).

For the first prong of the qualified immunity analysis – whether the official violated a constitutional right – the plaintiff must plead that the supervisor was either personally involved in the constitutional deprivation, or that there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See, e.g.*, *id.* at 646. For the second prong – the "clearly established" inquiry – the right must be sufficiently clear such that "every reasonable official would have understood that what he is doing violates the right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2078 (2011). This means that "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 2083. When determining whether a right was clearly established, the Court may not define the constitutional right at a high level of generality, because doing so "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff* at 2023. "The relevant inquiry is whether, at the time of the officers' action, the state of the law gave the officers fair warning that their conduct was unconstitutional." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013).

Mr. Baldiviez argues that he would be entitled to qualified immunity even if the allegations contained in Plaintiffs' SAC were proven true. *See* Mot. at 4. He claims that Plaintiffs fail to plead the existence of a constitutional violation against him because "supervisory officers are not liable for actions of subordinates on any theory of vicarious liability." *Id.* at 5. He contends that since Plaintiffs do not allege that he personally "seized, impounded, and/or sold or otherwise disposed of" the targeted Plaintiffs' vehicles, and because Plaintiffs make only conclusory allegations that he was involved in the towing conspiracy, that Plaintiffs' pleadings against him are insufficient to overcome qualified immunity. *See id.* at 6-7. Mr. Baldiviez's arguments focus on his contention that Plaintiffs have not pled that he was personally involved in the conspiracy and that "any other reasonable [police] Chief would have handled its (sic) officers in the same manner." Mot. at 8.

Mr. Baldiviez's arguments regarding personal involvement are wholly unpersuasive and completely ignore the factual pleadings in the SAC. First, Plaintiffs plead that Mr. Baldiviez ratified and approved the towing scheme, which amounted to an unconstitutional deprivation of

3

1   the Plaintiffs' property rights and which enriched his fellow conspirators. *See* SAC ¶ 71. Second,

2   Plaintiffs allege that Mr. Baldiviez *personally profited* from the conspiracy. *See* SAC ¶¶ 30, 32.

3   These two factual pleadings are sufficient to show Mr. Baldiviez's personal involvement in the

4   scheme. *See Hansen* at 645-46; *see also Spitzer v. Aljoe*, 2014 WL 1154165, at *3 (N.D. Cal. Mar.

5   20, 2014) ("[This circuit's ruling in *Blankenhorn v. City of Orange*] does not limit liability to the

6   officer that actually seizes the vehicle.").

7         Mr. Baldiviez does not have the temerity in his motion to argue that personally profiting

8   from a subordinate officer's unlawful conduct was not a clearly established constitutional

9   violation, but the Court briefly addresses this point here.

10         The first prong of the qualified immunity analysis asks whether the official violated a

11   constitutional right. The Fourteenth Amendment prohibits state actors from depriving individuals

12   of their property without due process of law. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517 (1984);

13   *Samson v. City of Bainbridge Island*, 683 F.3d 1051 (9th Cir. 2012); *see also Daniels v. Williams*,

14   474 U.S. 327, 331 (1986) (stating that the due process clause was "intended to secure the

15   individual from the *arbitrary exercise* of the powers of government."). This circuit has held, in the

16   context of towing automobiles, that absent an emergency or exigent circumstances, individuals

17   must be given due process before a car is towed. *See Clement v. City of Glendale*, 518 F.3d 1090,

18   1093 (9th Cir. 2008) ("[T]he government may not take property like a thief in the night. . . .

19   [H]aving one's car towed [] imposes significant costs and burdens on the car's owner."). Plaintiffs

20   allege Mr. Baldiviez's personal involvement in the deprivation of individuals' property without

21   due process. *See, e.g.*, SAC ¶ 32.

22         The second prong of the qualified immunity analysis asks whether the constitutional right

23   in question is clearly established, and considers whether "every reasonable official would have

24   understood that what he is doing violates the right." *al-Kidd* at 2078. Plainly, it is clearly

25   established that a police officer, like any public official, cannot personally profit from his

26   participation in the unconstitutional deprivation of an individual's rights. Courts have addressed

27   this question in the context of police searches and seizures, *see Soldal v. Cook Cnty., Ill.*, 506 U.S.

28   56, 67-73, as well as public officials receiving bribes and kickbacks, *see, e.g.*, *United States v.*

4

*deVegter*, 198 F.3d 1324, 1328 (11th Cir. 1999) ("When official action is corrupted by secret bribes or kickbacks, the essence of the political contract is violated."), and "bullying a suspect or getting even." *A.D. v. Calif. Hwy. Patrol*, 712 F.3d 446, 453 (9th Cir. 2013) (calling such actions "illegitimate law enforcement objectives"). This circuit has further held, in *Clement*, that a police officer may not simply take an individual's car without due process. *Clement* at 1093.

Though the Court is unaware of a case in which a court expressly holds that a police chief cannot receive personal financial gain from the unconstitutional actions of his subordinates – unconstitutional actions he allegedly ratified and approved – "[c]ertain actions *so obviously run afoul of the law* that an assertion of qualified immunity may be overcome even though court decisions have yet to address 'materially similar' conduct." *Hope v. Pelzer*, 536 U.S. 730, 753 (2002) (emphasis added); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (2001) (holding that there is a clearly established right not to be "subjected to criminal charges on the basis of evidence that was deliberately fabricated by the government," and that "[p]erhaps because the proposition is virtually self-evident, we are not aware of any prior cases that have expressly recognized this specific right"). The acts pled by Plaintiffs in the SAC so obviously run afoul of the law that Defendant Baldiviez would not be entitled to qualified immunity were they proven true. *Any reasonable police officer, let alone the police chief, would have known that such conduct violates the Constitution. See al-Kidd* at 2078.

## IV. ORDER

For the foregoing reasons, Defendant Baldiviez's motion to dismiss on grounds of qualified immunity is DENIED, without prejudice. Defendant may re-assert qualified immunity through a motion for summary judgment following the further development of the factual record in this case.

**IT IS SO ORDERED.**

Dated: April 8, 2015

BETH LABSON FREEMAN
United States District Judge

5