1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| JESUS GARCIA, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>CITY OF KING CITY, et al.,<br><br>                    Defendants. | Case No.  14-cv-01126-BLF<br><br>**ORDER GRANTING FINAL APPROVAL** |

Alleging that Defendants targeted the Hispanic and Latino residents in a scheme to wrongfully impound and tow their vehicles, Plaintiffs Maria E. Solis and Blanca Lilia Bonilla (collectively, "Plaintiffs") sued City of King City ("King City") and other defendants for violations of 42 U.S.C. section 1983, as well as a number of state law claims.  *See generally* Third Am. Compl., Garcia et al. v. City of King City et al., ECF 86 (filed Apr. 24, 2015) (hereinafter, "TAC").  Two motions are pending in this putative class action for wrongful taking of property and conspiracy.  First, the parties jointly move for an order granting final approval to the settlement agreement.  Mot. for Final Settlement Approval, ECF 142, (hereinafter, "Final Approval Mot.").  Second, Plaintiffs move for an award of attorneys' fees, expenses and other relif.  Mot. for Att'y Fees, Expenses, and Other Relief, ECF 139 (hereinafter, "Mot. for Att'y Fees").  The Court held a final fairness hearing on January 13, 2017.  For the reasons set forth below, the Court GRANTS the motion for final approval and the motion for attorneys' fees, costs, and incentive award.

## I.   BACKGROUND

### A.   The Parties and Claims

Plaintiffs bring this class action against City of King City ("King City") and other

United States District Court
Northern District of California

1  defendants, alleging that Defendants conspired to target Hispanic and Latino drivers in King City,

2  California, and to wrongfully tow and impound their automobiles.  TAC ¶¶ 20, 21.  According to

3  Plaintiffs, at an unknown time, believed to be in 2009, and continuing until sometime in 2014,[1]

4  King City police officers, including several of the named defendants, conspired with the owner of

5  a local towing company, Miller's Towing, to create a towing scheme: an officer would pull over

6  an automobile driven by a Hispanic or Latino individual, would order the vehicle be towed or

7  impounded without legal justification, and then a tow truck from Miller's Towing would arrive

8  within minutes to tow away the car.  *Id.* ¶¶ 20, 22-24, 27-28.  The conspirators (referred to

9  throughout the TAC as "the Crew") would then sell the victims' vehicles and retain the proceeds

10  from the sale, misappropriate the vehicles for their personal use, or require the victims to pay

11  exorbitant fees in order to recover their vehicles.  *Id.* ¶¶ 24-32.

12  Plaintiffs filed the complaint in this action on March 10, 2014.  Compl., ECF 1. After

13  several rounds of amendments and motion practice, a third amended complaint was filed on April

14  24, 2015.  TAC, ECF 86.  The parties participated in a settlement conferences held before

15  Magistrate Judge Laurel Beeler on August 25, 2015.  ECF 110, 115.  The parties were able to

16  reach a preliminary settlement, which the Court approved, conditionally certifying the putative

17  class for settlement purposes only on June 9, 2016.  ECF 129.  In its order granting Plaintiffs'

18  motion for preliminary approval, the Court also (1) appointed Maria E. Solis and Blanca Lilia

19  Bonilla as certified class representatives; (2) approved the parties' proposed notice; (3) set the

20  deadline for opt-out and objection deadline 45 days from Notice Date; (4) set the deadline for

21  filing claims 120 days from Notice Date and (5) set the date of the fairness hearing on January 13,

22  2017.  Mot. Preliminary Approval 19, ECF 123; Order Preliminarily Approving Class Action

23  Settlement, ECF 129 (hereinafter, "Preliminary Approval Order"); Settlement Agreement 15, ECF

24  123-3.  On August 18, 2016, Plaintiffs moved with the consent of Defendants, to extend the opt-

25  out and objections deadline until November 18, 2016.  ECF 135.  The Court granted the extension.

26  ECF 136.  On October 31, 2016, Plaintiffs moved, with the consent of Defendants, to extend the

27

28  _____
[1] The class period commences three (3) years prior to the filing of the original complaint in this action on March 10, 2014. Compl., ECF 1; TAC ¶ 143 n.2.

2

United States District Court
Northern District of California

1   claims period and for a second time, to extend the opt-out and objections deadline until December

2   23, 2016, which the Court also granted.  ECF 137, 138.  Plaintiffs represented that since the

3   Notice was distributed, Class Counsel undertook local community outreach in King City and

4   provided workshops and in-person information to putative Class Members.  *Id.* at 2-3.  Since the

5   first extension, the Settlement Administrator received an additional 12 claims.  *Id.* at 3.  However,

6   to ensure that the outreach campaigns reach as many putative Class Members as possible and to

7   allow sufficient time for submitting objections and claims, Plaintiffs moved for this second

8   extension.  *Id.*

Plaintiffs now move for final approval of class action settlement on behalf of:

> [a]ll natural persons whose motor vehicles were stopped and
> ordered towed and/or impounded by Miller's Towing at the
> direction of one of the following officers of the King City,
> California, Police Department: Bruce Miller, Bobby Carrillo,
> Mario Mottu, Sr., Jaime Andrade, Dominic "Nick" Baldiviez,
> Jesus Yanez, Joey Perez and Jerry Hunter between March 9, 2011
> and February 25, 2014. Potential class members whose vehicles
> were stopped and towed incident to a violation of the California
> Penal Code, Health & Safety Code or Vehicle Code Sections
> 23152 (a) or (b) (DUI) are not eligible for compensation.

16  Final Approval Mot. 11-12; Preliminary Approval Order ¶ 5; *see* TAC ¶ 143.  Plaintiffs have also

17  moved for attorney fees, expenses, and other relief.  Mot. for Att'y Fees.  The Court held a

18  fairness hearing on January 13, 2017.

19  **B.     Terms of the Agreement**

20          Under the terms of the preliminarily approved settlement agreement, the parties have

21  agreed that (1) King City shall transfer to the Escrow Agent $1,225,000.00 as the Settlement

22  Fund; (2) each Claimant shall receive $3,902.84 from the Settlement Fund; (3) the two certified

23  class representatives shall be paid an incentive award in the amount of $2,000 each out of the

24  Settlement Fund; (4) attorney fees, expenses, and administrative costs shall be paid from the

25  Settlement Fund; and (5) any portion of the Settlement Fund that is not distributed will revert to

26  King City.  Settlement Agreement 12, 16, 19-20; Ex. 1A to Osman Supp. Decl. in support of Mot.

27  Preliminary Approval, ECF 125.  As of January 2, 2017, the Settlement Administrator has

28  received 43 timely claims by potential Class Members.  Final Approval Mot. 17.

3

United States District Court
Northern District of California

The Court discusses other aspects of the agreement pertinent to the pending motions below.  As approved by the Court, the Settlement Agreement provided that:

### i.    Notice Distribution

Within thirty (30) days after the date of the Preliminary Approval Order, King City shall provide to the Settlement Administrator, in an electronic database format, from the information in its data compilation, for the Class Period, the full legal name, and last known physical address of all potential Class Members.  The Settlement Administrator shall utilize Class Members' information provided by King City solely for purposes of effectuating Notice and administering the Settlement Fund, including withholding taxes, and shall keep the information confidential, including from Class Counsel.  Settlement Agreement 8.

Along with the Notice of Class Action Settlement, a claim form, an opt-out request, the distribution includes a Summary Notice of Class Action Settlement, which is the community distribution summary of the Notice of Class Action Settlement, are to be physically distributed by designees of Class Counsel and the Settlement Administrator to persons in King City, California, and placed at various locations within King City in order to more fully assure that all potential Class Members will receive notice.  *Id.* at 6.

### ii.    Claims Filing Procedure

Named Plaintiffs and Class Members who do not opt out shall be entitled to submit claims by filing out the claim forms and mailing them to the Settlement Administrator.  *Id.* at 15; Ex.4 to Osman Decl.  To be eligible for an award from the Settlement Fund, Named Plaintiffs and Settlement Class Members must submit the claim form manually, postmarked by the date established by the Court.  Settlement Agreement 15.

Valid claimants must either be the driver or the registered owner of one of the 229 vehicles identified in King City's database as having been towed by Miller's Towing with one of the individual officer defendants as either the initiating officer or the impound officer.  *Id.*

### iii.    Reversion

In the event monies remain as residue in the Settlement Fund following all distribution efforts approved by the Court and payment of any taxes during the eighteen (18) month claims

period, all such funds shall revert to King City.  *Id.* at 16.  Settlement Administrator shall deposit or cause to be deposited by wire transfer to King City any amount remaining in the Settlement Fund following distributions and payment of any taxes.  *Id.*

## II.    FINAL APPROVAL OF SETTLEMENT AGREEMENT

In line with its previous order granting preliminary approval, the Court now concludes that the proposed settlement is fair, adequate, and reasonable.

### A.    Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  *Id.* at 1026.  In order to assess a settlement proposal, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also require a higher standard of fairness.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

### B.    Rule 23(a) and (b) Requirements

A class action is maintainable only if it meets the four Rule 23(a) prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;

United States District Court
Northern District of California

5

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In a settlement-only certification context, the "specifications of the Rule . . . designed to protect absentees by blocking unwarranted or overbroad class definitions . . . demand undiluted, even heightened, attention[.]"  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Id.*

In addition to the Rule 23(a) prerequisites, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Prods., Inc.*, 521 U.S. at 614.  Rule 23(b)(3), relevant here, requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The "pertinent" matters to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.*

The Court had previously found the settlement class satisfied the requirements for numerosity, commonality, typicality, and adequacy of representation under Rule 23(a) so the discussion will be brief here.  Mot. for Preliminary Approval 13-16, ECF 123; Preliminary Approval Order.  First, King City estimated that the class is well in excess of 200 persons, thereby satisfying the numerosity requirement.  Mot. for Preliminary Approval 13.  Second, the Class Members share the common questions of law and fact pertaining to, for example, whether Defendants took Class Members' property in violation of a statutory or constitutional right,

actionable under 42 U.S.C. section 1983, whether Defendants conspired to undertake the wrongful acts, whether King City was deliberately indifferent to the violations, and whether other causes of action stated in the Third Amended Complaint were implicated. *Id.* at 14.  Third, the claims of Class Representative Solis and Bonilla are typical of the class, suffering damages because their vehicles were towed and impounded as part of the "scheme." *Id.* at 15.  The representation is also adequate because there are no known conflicts of interest with proposed Class Members and Class Counsel is experienced in class action lawsuits such as this. *Id.*  Lastly, the questions of law and fact common to members of the class predominate over questions affecting only individuals, as the core issue concern the legality of the tows and impounds of the vehicles of the class members and a class action is a fair and efficient method to resolve their claims. *Id.* at 16.  The Court is unaware of any changes since the preliminary approval that would alter its analysis. *See G.F. v. Contra Costa Cty.*, No. 16-3667, 2015 WL 4606078, at *11 (N.D. Cal. July 30, 2015).

### C.    Adequacy of Notice

"The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court has previously approved the parties' proposed notice procedures for the class. Preliminary Approval Order 2; Mot. for Preliminary Approval 17-18.  In the motion for final approval, Plaintiffs state that the parties have carried out this notice plan.  Final Approval Mot. 19.

Upon preliminary approval of the settlement in this case, the Settlement Administrator provided individual first-class mail notice of the settlement, along with claim and opt-out forms in Spanish and English to the potential Class Members identified in the database and in supporting documentation provided by King City during settlement negotiations. *Id.* at 16.  On July 21, 2016, the individual notice was mailed to 241 addresses, which included duplicate addresses for known potential Class Members. *Id.* at 16; Settlement Administrator's Affidavit in Proof of Class Notice, ECF 141-1 ("Affidavit"); and Settlement Administrator's Supplemental Affidavit in Proof of Class Notice, Exhibit 1 to Final Approval Mot., ECF 142-1,) ("Supp. Affidavit").

Of the individual notices in the original mailing, 71 notices were returned as undeliverable.

1  The Settlement Administrator located new addresses for many of the potential Class members, and

2  the settlement notice and forms were remailed.  Final Approval Mot. 17.  From this second

3  mailing, only 38 notices were returned as undeliverable.  Supp. Affidavit.

4  Due to the Court's extension of the claims, opt-out, and objections period, the Settlement

5  Administrator conducted additional first-class mail campaigns to all potential Class members on

6  August 18, 2016, and on November 17, 2016, in an effort to provide notice to all potential Class

7  Members.  *Id.* at 2.  Ultimately, only 35 notices were returned as undeliverable from all the

8  mailed-out notices.  *Id.*

9  In addition, the Court-approved community notification program was undertaken by

10  Spanish-speaking Class Counsel Blanca Zarazua in conjunction with the Settlement Administrator

11  to provide notice and an explanation of the settlement and the opportunity for potential Class

12  Members to make a claim, opt-out, or object to the settlement.  *Id.*; Affidavit.  In implementing

13  that campaign, flyers in English and Spanish were posted on November 3 through 6, 2016 to invite

14  potential Class Members to workshops.  *Id.*; Supp. Affidavit.  At least four (4) workshops were

15  held by Class Counsel Zarazua to personally meet with and provide information to potential Class

16  Members. *Id.*; Affidavit.

17  As of January 2, 2017, the Settlement Administrator has received 43 timely claims by

18  potential Class Members.  Supp. Affidavit.  There have been no opt-out requests submitted as of

19  January 2, 2017, and no objections to the settlement were filed by December 23, 2016 (the

20  deadline for objections).  Final Approval Mot. 17.

21  In light of these actions and the Court's prior order granting preliminary approval, the

22  Court finds that the parties have sufficiently provided notice to the settlement Class Members.  *See*

23  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (holding that notice must

24  "apprise interested parties of the pendency of the action and afford them an opportunity to present

25  their objections"); *Lundell v. Dell, Inc.*, No. C05-3970, 2006 WL 3507938, at *1 (N.D. Cal. Dec.

26  5, 2006) (holding that notice sent via email and first class mail constituted the "best practicable

27  notice" and satisfied due process requirements).

28

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### D.     Fairness, Adequacy and Reasonableness

#### i.     Strength of Plaintiffs' Case and Risk of Continuing Litigation

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Similarly, difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

Here, Plaintiffs acknowledge that despite the strength of their case, there could be substantial obstacles to certification of a litigation class, overcoming dispositive motions, and proving the merits in a complex case such as this.  Final Approval Mot. 24-25.  Plaintiffs also note that King City is the only defendant with the financial resources to pay Class Members, adding to the risk of litigation. *Id.* at 24.  Defendants, particularly defendant King City, promised a vigorous defense of the action in the absence of this settlement. *Id.*  Although Plaintiffs and the other Class Members were clearly harmed, the difficulty in identifying and quantifying damages specific to individual Class Members offers defendants several defenses that could prove successful at trial. *Id.*

The Court finds that these factors weigh in favor of settlement.

#### ii.     Settlement Amount

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Officers for Justice*, 688 F.2d at 628).  "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

When compared to the potential recovery by Class Members at trial, an average of $1,982.59 according to King City's estimate, the settlement would provide almost $4,000 for each Claimant.  Final Approval Mot. 25 (citing *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding that a certain recovery of just over six percent of the potential

1    recovery after accounting for attorneys' fees and costs to be reasonable and favoring approval of

2    the settlement).  Furthermore, there have been no objections to the settlement.[2]

3         Under these circumstances, this factor weighs in favor of approval.

4         **iii.   Extent of Discovery**

5         "In the context of class action settlements, 'formal discovery is not a necessary ticket to the

6    bargaining table' where the parties have sufficient information to make an informed decision

7    about settlement."  *In re Mego Fin. Corp.*, 213 F.3d at 459 (citation omitted).

8         Here, significant paper discovery was completed.  Final Approval Mot. 8.  In response to

9    Plaintiffs' initial request for production of documents, King City produced nearly 1,000

10   documents, including those relating to vehicles towed during the relevant time period and

11   employee personnel records related to the officers involved in the "towing scheme."  *Id.*  Counsel

12   for King City also analyzed volumes of records, including California Highway Patrol 180 tow

13   forms, traffic citations, California Law Enforcement Telecommunications System printouts, police

14   reports, mailed notices, and other miscellaneous documents.  Final Approval Mot. 8-9.  The entire

15   cache of documents associated with these tows comprised over eight gigabytes of data.  *See*

16   Osman Decl. in support of Mot. for Preliminary Approval, ECF 123-2; Allsup Decl. in support of

17   Mot. for Preliminary Approval, ECF 123-3; Final Approval Mot. 9.

18        The amount of discovery performed put Class Counsel in a strong position to evaluate this

19   case and conclude that settlement was the best way forward.  *Omnivision*, 559 F. Supp. 2d at 1042

20   (finding the parties were sufficiently informed about the case prior to settling because they

21   engaged in discovery, took depositions, briefed motions, and participated in mediation).  This

22   factor therefore weighs in favor of approval.

23   _____

24   [2] An unidentified man in the gallery addressed the Court during the fairness hearing.  He informed
     the Court that he has submitted a claim and that certain police officers have not been prosecuted.
25   The Court advised him to contact his local and state authorities. Toward the end of his remarks, he
     also conclusorily stated that the amount of settlement is not enough to cover his "Maserati."
26   Given that the Settlement Administrator has not received any objections and the man's
     representation that he has submitted a claim, the Court does not accept this man's remarks as a
27   proper objection in accordance with the approved procedure.  *See Allen v. Bedolla*, 787 F.3d 1218,
     1223 (9th Cir. 2015) (internal quotation marks omitted) (noting that "it is the nature of a
28   settlement, as a highly negotiated compromise . . . that it may be unavoidable that some class
     members will always be happier with a given result than others").

United States District Court
Northern District of California

United States District Court
Northern District of California

iv.      **Counsel's Experience**

Plaintiffs' Lead Class Counsel Michael Allsup also declares the amount to be fair, adequate, reasonable, and in the best interest of the class members.  Ex. 2 to Final Approval Mot. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each parties' expected outcome in litigation.").  Here, Class Counsel is experienced in the prosecution, defense, and settlement of complex actions, especially in areas of personal injury, civil rights, and class action.  Final Approval Mot. 23; Allsup Decl. in support of Mot. for Att'y Fees ¶¶ 46-49, ECF 139-1 ("Allsup Decl.") (listing cases in which Lead Class Counsel has served).  In light of Class Counsel's considerable experience and their belief that the settlement provides more than adequate benefits to Class Members, this factor weighs in favor of approval.

v.      **Presence of a Governmental Participant**

Defendant King City is a local governmental authority, who also agrees to the terms of the Settlement Agreement.  Thus, this factor weighs in favor of approval.

vi.      **Reaction of the Class**

As noted above, it was estimated that there are approximately more than 200 Class Members.  Mot. for Preliminary Approval 13.  It is worth noting that Class Members, as well as the Class Representatives, are extremely and understandably reluctant to participate in this case, or to even make a claim for settlement benefits, due to a fear of retaliation by the police or a governmental inquiry into their immigration status, or both or worse.  Final Approval Mot. 18. Potential class members and the Class Representatives are of Hispanic or Latino origin, of lower economic status, speak little or no English, and, after the events leading to this lawsuit, have a justifiable fear of the police. *Id.*

However, 43 potential Class Members have filed claims and the two certified Class Representatives, in spite of that fear and at personal risk of adverse legal actions, became and remain personally and directly involved in prosecuting this class action against the defendant King

1    City police officers and King City itself. *Id.* The deadline for Class Members to submit

2    objections to the settlement or the fees and expenses motion, or to request exclusion from the

3    Settlement Class was December 23, 2016. *Id.* at 12. None have opted out or filed a timely

4    objection. *Id.* at 17.

5          In light of Class Counsel's repeated efforts in locating Class Members and encouraging

6    claim submission, and the zero opt-out and objection rates, this factor strongly favors final

7    approval. *Cf. In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1006 (N.D. Cal.

8    2015) (approving class action settlement with claim rate of approximately 25-30%); *Moore v.*

9    *Verizon Commc'ns Inc.*, No. C 09-1823, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013)

10   (approving class action settlement with 3% claim rate); *see also Churchill Vill.*, 361 F.3d at 577

11   (finding no abuse of discretion where district court, among other things, reviewed list of 500 opt-

12   outs in a class of 90,000 Class Members); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D.

13   Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair,

14   adequate, and reasonable when few class members object to it."); *Chun-Hoon v. McKee Foods*

15   *Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (granting final approval of settlement where 16

16   out of 329 class members (4.86%) requested exclusion).

17         **E.    The *Bluetooth* Factors**

18         Although the *Churchill* factors favor settlement, consideration of those factors alone is

19   insufficient. *See In re Bluetooth*, 654 F.3d at 946. Where, as here, the parties reach a settlement

20   prior to class certification, courts must examine the settlement with "an even higher level of

21   scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under

22   Rule 23(e) before securing the court's approval as fair." *Id.* (citations omitted). "Collusion may

23   not always be evident on the face of a settlement, and courts therefore must be particularly vigilant

24   not only for explicit collusion, but also for more subtle signs that class counsel have allowed

25   pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.*

26   at 947. Signs of subtle collusion include:

27                    (1) when counsel receive a disproportionate distribution of the
                      settlement, or when the class receives no monetary distribution but
28                    class counsel are amply rewarded;

(2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotations marks and citations omitted).

Here, the Court finds that there is no indication of a collusive deal. The first factor is not present—while the Class Members are entitled to recover from the $1,225,000.00 pool of Settlement Fund, the attorneys' fees will not exceed $306,250. Mot. for Att'y Fees 2. This amount represents 25 percent of the value of the Settlement Fund. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (finding that the Ninth Circuit sets a "benchmark" fee award at 25% of the recovery obtained).

As to the second factor, the settlement agreement contains a clear sailing provision. The agreement states that "[King City] and the City's Counsel will take no position on any applications for Attorneys' Fees and Expenses by Class Counsel as provided herein" Settlement Agreement 19, § VI.A.3. "Although clear sailing provisions are not prohibited, they 'by [their] nature deprive . . . the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored." *In re Bluetooth*, 654 F.2d at 949 (quoting *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)). When "confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefits to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Id.* at 948 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)).

However, the attorneys' fee award represents less than the lodestar amount of time and expense counsel actually devoted to the litigation. Allsup Decl. ¶¶ 55, 65, 71, 77, 88; Mot. for Att'y Fees 18. And, had the fee amount been litigated rather than negotiated, a multiplier could have been awarded and the fees substantially higher. *See, e.g.*, *MacDonald v. Ford Motor Co.*, No. 13-cv-2988, 2016 WL 3055643, at *9–10 (N.D. Cal. May 31, 2016) (awarding fee multiplier

United States District Court
Northern District of California

13

of 2.0).  The parties' fee agreement thus represents a legitimate compromise and not a collusive agreement to pay Class Counsel more in exchange for paying the class less.  *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016) (clear-sailing provision does not signal collusion when the agreed-upon fees are reasonable and the relief negotiated for the class is favorable).

        As to the third factor, while there is no kicker arrangement whereby "unpaid attorneys' fees" would revert to the defendant, all unclaimed funds remaining in the Settlement Fund, after payment of valid claims, payment of Class Counsel's attorneys' fees and litigation expenses, and payment of settlement administration expenses, will revert to the City.  Settlement Agreement 16, § IV.B.5; *In re Bluetooth*, 654 F.3d at 949.  Courts are often "skeptical of reversion clauses" as they might be used as a "collusive vehicle resulting in significant fees for class counsel, a low payout by defendants, and limited benefits to the class."  *Moore v. PetSmart, Inc.*, No. 12-03577, 2014 WL 1927309, at *4 (N.D. Cal. May 14, 2014); *Small v. Target Corp.*, 53 F. Supp. 3d 1141, 1143 (D. Minn. 2014).  However, "reversion to the defendant may be appropriate when deterrence is not a goal of the statute or is not required by the circumstances."  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990).

        In light of the circumstances at play in this case, the Court finds that the reversion clause is not inappropriate.  Under the terms of the Settlement Agreement, each qualified Class Member filing a timely claim will receive a cash award of $3,902.84, irrespective of the number of qualified claimants or the amount of attorneys' fees and other amounts paid from the fund. Settlement Agreement 16, § IV.B.3.  The amount paid to qualified class members will not increase if other payments from the fund are decreased.  Mot. for Att'y Fees 12-13.

        The proposed settlement was also the product of arm's-length, non-collusive negotiations, with the assistance of Magistrate Judge Laurel Beeler who conducted the settlement conferences. *Ellsworth v. U.S. Bank, N.A.*, No. 12-02506, 2015 WL 1883911, at *4 (N.D. Cal. Apr. 23, 2015); *G. F. v. Contra Costa Cty.*, No. 13-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").  This reversion of excess and unclaimed funds was agreed to

14

by Plaintiffs, at the insistence of both Magistrate Judge Beeler and King City.  Final Approval

Mot. 12-13.  This is because King City must repay its self-insuring authority for the funds paid

under the settlement so the Settlement Fund consists ultimately of public and taxpayer funds

which must be absorbed by the taxpayers of King City.  *Id.*  Because of this reason, and only

because of this reason, Class Counsel agreed to the reversion of unpaid settlement funds.  *Id.* at

13.; *e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) (given the timely

and exceptional results achieved for the class, finding "that the class interests were not

compromised by the reversion clause").  As such, the Court concludes that the reversion clause

does not indicate collusion.

   Similarly, the $2,000 incentive awards to each of the class representatives, Plaintiffs Solis

and Bonilla, are not indicative of a collusive deal, as they are lower than "typical incentive awards

in the Ninth Circuit, where $5,000 is presumptively reasonable."  *Smith v. Am. Greetings Corp.*,

No. 14-cv-2577, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016).

   Accordingly, the Court concludes that the settlement does not raise an inference of

collusion that warrants invalidation of the class settlement as a whole.

## III.     ATTORNEYS' FEES AND COSTS

### A.     Legal Standard

#### i.     Fees and Costs

   "While attorneys' fees and costs may be awarded in a certified class action where so

authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent

obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have

already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941.  "Where a settlement produces a

common fund for the benefit of the entire class," as here, "courts have discretion to employ either

the lodestar method or the percentage-of-recovery method" to determine the reasonableness of

attorneys' fees.  *Id.* at 942.  "Because the benefit to the class is easily quantified in common-fund

settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the

common fund in lieu of the often more time-consuming task of calculating the lodestar."  *Id.*

"Applying this calculation method, courts [in the Ninth Circuit] typically calculate 25% of the

fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  However, the benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. "[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *In re Bluetooth*, 654 F.3d at 942.

### ii.   Costs

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotations and citation omitted).  To support an expense award, Plaintiffs should file an itemized list of their expenses by category, listing the total amount advanced for each category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. 06-cv-5778, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), supplemented, No. 06-cv-5778, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

### B.   Analysis

#### i.   Attorneys' Fees

Class Counsel moves the Court for $306,250 in attorneys' fees, representing 25 percent of the settlement amount.  Mot. for Att'y Fees 2.  Class Counsel argues that this award is reasonable because they have spent 1,248 hours working on behalf of the class, which at hourly billing rates for similarly experienced lawyers in the San Francisco Bay Area, amounts to a lodestar value of $489,530 or $474,350 if a $500 per hour blended rate is used. *Id.* at 18; Clemon Decl. in support of Mot. for Att'y Fees ¶ 38.

After careful review of Class Counsel's declarations and filings, the Court concludes that awarding $306,250 in attorneys' fees to Class Counsel is reasonable.  First, the award requested meets the 25 percent "benchmark" for a reasonable fee award in the Ninth Circuit. *See In re*

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1  *Bluetooth*, 654 F.3d at 942.  Such a fee award is "presumptively reasonable."  *Ching v. Siemens*

2  *Indus., Inc.*, No. 11-cv-4838, 2014 WL 2926210, at *7 (N.D. Cal. June 27, 2014) (citing *In re*

3  *Bluetooth*, 654 F.3d at 942).

4     The Court has also crosschecked this award against the lodestar recovery.  Class Counsel

5  calculated the anticipated lodestar as $489,530, which, as previously stated, is higher than the

6  requested amount.  Mot. for Att'y Fees 18; Clemon Decl. in support of Mot. for Att'y Fees ¶ 38.

7     Finally, Class Counsel is entitled to an award of attorneys' fees under 42 U.S.C. section

8  1988(b) for proceedings in vindication of civil rights.  Section 1988 authorizes courts to award "a

9  reasonable attorney's fee as part of the costs" to a "prevailing party" in cases brought under

10  various civil rights statutes, including § 1983.  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir.

11  2016).  Under this section, Plaintiffs' success through a settlement rather than through a judgment

12  following trial still makes them the prevailing party.  *See Bravo v. City of Santa Maria*, 810 F.3d

13  659, 666 (9th Cir. 2016) (noting in a section 1983 case, that the plaintiffs who received a

14  settlement are the prevailing parties).   Accordingly, Class Counsel's motion for $306,250 in

15  attorneys' fees is GRANTED.

16     **ii.    Costs**

17     Plaintiffs are also seeking reimbursement of $16,000 in expenses, as agreed upon in the

18  Settlement Agreement.  Mot. for Att'y Fees 2; Allsup Decl. ¶¶ 96-97; Settlement Agreement 19, §

19  VI.A.1.  Class Counsel actually has incurred a total of $19,615.87 and has provided lists of the

20  costs and expenses.  *Id.* ¶ 97; Appendices F to H to Allsup Decl.  Expenses resulted from travel,

21  meals, expert consultation regarding the litigation, photocopying, computer and other legal

22  research, clerical preparation of pleadings and other papers, service of process and document

23  service costs, investigative services, and other necessary and appropriate costs and expenses.  *Id.* ¶

24  98.  Upon review, the Court finds the expenses are reasonable and GRANTS the motion for

25  $16,000 in expenses.

26  **IV.    SETTLEMENT ADMINISTRATOR'S FEES AND EXPENSES**

27     Plaintiffs also request the Court approve $7,000 for fees and expenses of Gentle, Turner,

28  Sexton & Harbison, LLC, as the escrow agent and Settlement Administrator.  Mot. for Att'y Fees

United States District Court
Northern District of California

1  2, 20.  The Settlement Agreement provides $7,000 for all costs of Notice and Administration to be

2  paid from the Settlement Fund, although the costs actually incurred amounted to $22,109.41.

3  Settlement Agreement 20, § VI.B; Mot. for Att'y Fees 20.  The administrator has prepared and

4  sent the Class notice of the settlement by prepaid first-class mail (the original notice, plus two

5  additional re-notice mailings), received, examined, processed, and determined the validity of

6  claims, regularly conferred and coordinated the administration with Class Counsel and King City's

7  counsel, and has acted fully as the Court's appointed escrow agent.  Mot. for Att'y Fees 20;

8  Appendix I to Allsup Decl.; Supp. Affidavit.

9        Given the size of the class, the multiple mailing campaigns, and the two deadline

10  extensions, the Court finds the administrator's fees substantially justified.  *E.g.*, *Ching*, 2014 WL

11  2926210, at *2 (approving an estimated $15,000 claims administrator fee for sixty-eight claims);

12  *Ozga v. U.S. Remodelers, Inc.*, No. 09-05112, 2010 WL 3186971, at *2 (N.D. Cal. Aug. 9, 2010)

13  (granting $10,000 to the claims administrator for 156 claims).  The requested amount is also less

14  than the amount actually incurred.  Mot. for Att'y Fees 20 (stating that the Settlement

15  Administrator has incurred $22,109.41 in fees, costs, expenses).  Accordingly, the Court approves

16  the class Settlement Administrator fee in the amount of $7,000.

17  **V.   INCENTIVE AWARD**

18      **A.   Legal Standard**

19        Incentive awards "are discretionary . . . and are intended to compensate class

20  representatives for work done on behalf of the class, to make up for financial or reputational risk

21  undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private

22  attorney general."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal

23  citation omitted).  Courts evaluate incentive awards individually, "using relevant factors including

24  the actions the plaintiff has taken to protect the interests of the class, the degree to which the class

25  has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing

26  the litigation and reasonable fears of workplace retaliation."  *Staton*, 327 F.3d at 977 (citation and

27  internal quotations and alterations omitted).  Indeed, "courts must be vigilant in scrutinizing all

28  inventive awards to determine whether they destroy the adequacy of the class representatives."

1   *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

2       **B.       Analysis**

3           Plaintiffs request an incentive award of $2,000 each for Lead Plaintiffs Solis and Bonilla.

4   Mot. for Att'y Fees 21; Settlement Agreement 20, § VI.C.  Plaintiffs believe this award is

5   reasonable in light of the contributions that Plaintiffs have made on behalf of Class Members.

6   Mot. for Att'y Fees 22-24.  First, the Class Representatives (and Class Members generally) were

7   extremely and understandably reluctant to participate in this case due to a fear of retaliation by the

8   police or a governmental inquiry into their immigration status, or both.  *Id.* at 22.  Potential Class

9   Members and the Class Representatives are of Hispanic or Latino origin, of lower economic

10  status, speak little or no English, and, after the events leading to this lawsuit, have a justifiable fear

11  of the police.  *Id.* at 22-23.  Further, both certified Class Representatives continue to live in King

12  City, subject to the risk of notoriety and personal difficulties given that there may be attention

13  directed to them in the future from media coverage or general interest in this case.  *Id.* at 23.

14          Second, before and after being named as Class Representatives, both Ms. Solis and Ms.

15  Bonilla met and conferred numerous times with Class Counsel regarding the merits of the case,

16  their personal claims, their role as class representatives, and other issues, including helping Class

17  Counsel in community notification outreach in King City.  *Id.* at 23-24.  Both certified Class

18  Representatives attended the settlement conference with Judge Beeler in San Francisco on August

19  25, 2015, and lost time from their work to travel there from King City for the day.  *Id.* at 24.  They

20  remain actively involved in the class notice, claims, and administration process.  *Id.*

21          Lastly, absent an incentive award, the certified Class Representatives will receive no

22  benefit from the settlement for their protracted and dedicated efforts greater than that received by

23  other qualifying Class Members.  *Id.*

24          To determine the reasonableness of an incentive award, courts consider the proportionality

25  between the incentive award and the range of class members' settlement awards.  *Dyer v. Wells*

26  *Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014).  In light of Lead Plaintiffs' service to

27  the class, amount of incentive award, and their exposure to the risk of retaliation, the Court finds

28  that a service award of $2,000 each is reasonable.  *E.g.*, *Harris v. Vector Marketing Corp.*, No. C-

United States District Court
Northern District of California

19

08-5198, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases holding that an award of $5,000 has been found to be presumptively reasonable in this Circuit). Further, the incentive award makes up only a "tiny fraction of the common fund," justifying the amount to be awarded. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

## VI.   ORDER

For the foregoing reasons, the Court hereby ORDERS as follows:

1.   The Class is certified for settlement purposes only.

2.   Final Approval is GRANTED as to the parties' Settlement Agreement (ECF 125), which is fair, adequate, and reasonable in all its terms within the meaning of Fed. R.  Civ. P. 23(e), and the Settlement Agreement shall be implemented and consummated according to its terms.

3.   The notice of this class action settlement provided and given to the Class constitutes due, adequate and sufficient notice, and meets the requirements of due process and any applicable laws.

4.   Upon the Effective Date of the Settlement Agreement as defined therein, each named plaintiff in this action and settlement Class member (who is not otherwise properly excluded as provided in the Settlement Agreement) (the "Releasors") shall release, forever discharge and covenant not to sue the City of King City, its elective and appointive boards, officers, officials, agents, servants, employees, partnerships, firms and corporations, and Bruce Edward Miller, Bobby Javier Carrillo, Mario Alonso Mottu, Sr., Jaime Andrade, Dominic "Nick" Baldiviez, Brian A. Miller, Jesus Yanez, Joey Perez, and Jerry Hunter (the "Released Parties") from all claims, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory, arising from or related to the facts, activities or circumstances alleged in the Third Amended Complaint (ECF 86), up to the Date of the Settlement (the "Released Claims") whether or not alleged in the Third Amended Complaint (ECF 86).

5.   Each Releasor expressly agrees that, upon the Effective Date, it waives and forever releases with respect to the Released Claims any and all provisions, rights and benefits conferred by either (a) § 1542 of the California Civil Code, which reads:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if

20

1

known by him or her must have materially affected his or her settlement with the debtor.

2

or (b) any law of any state or territory of the United States, or principle of common law, which is

3

similar, comparable or equivalent to § 1542 of the California Civil Code.

4

6.      The Settlement Administrator shall pay to Class Counsel, in the manner instructed

5

by Class Counsel, the sum of $306,250 as attorneys' fees from the Settlement Fund in accordance

6

with the terms of the Settlement Agreement.

7

7.      The Settlement Administrator shall pay to Class Counsel the sum of $16,000 as

8

reimbursement for their litigation expenses in this action from the Settlement Fund in accordance

9

with the terms of the Settlement Agreement.

10

8.      The Settlement Administrator shall pay to itself the sum of $7,000 for its fees and

11

expenses incurred in the notice and administration of this class action settlement in accordance

12

with the terms of the Settlement Agreement.

13

9.      The Settlement Administrator shall pay to certified Class Representatives Maria E.

14

Solis and Blanca Lilia Bonilla the sum of $2,000 each as incentive awards in accordance with the

15

terms of the Settlement Agreement.

16

10.     By means of this Final Approval Order, the Court enters Final Judgment as

17

between Plaintiffs, the Class (except properly excluded members of the Class) and all Defendants.

18

11.     Without affecting the finality of this judgment in any way, the Court retains

19

continuing jurisdiction of this action, including, but not limited to, (a) implementation,

20

enforcement, and administration of the Settlement Agreement, including all releases in connection

21

therewith; (b) resolution of any disputes concerning settlement class membership or entitlement to

22

benefits under the terms of the Settlement Agreement; and (c) all parties hereto, including

23

members of the Class, for purposes of enforcing and administering the Settlement Agreement and

24

this action generally until each and every act agreed to be performed by the parties has been

25

performed pursuant to the Settlement Agreement.

26

12.     This action is dismissed with prejudice as against all Defendants.

27

13.     The parties shall bear their own costs and attorneys' fees except as expressly

28

otherwise provided in the Settlement Agreement and this order.

United States District Court
Northern District of California

1          **IT IS SO ORDERED.**

2

3    Dated: January 25, 2017

4                                                    _____
                                                     BETH LABSON FREEMAN
5                                                    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28